JOHN QUICK, Administrator, *vs.* MINNESOTA IRON COMPANY.

November 19, 1891.

**Master and Servant—Assumption of Risks.**—Application of the rule
   that a servant ordinarily assumes such risks of his employment, because
   of an unsafe place or of unsafe appliances, as are manifest to the senses,
   or may be ascertained by a prudent use of them.

Appeal by defendant from an order of the district court for St. Louis county, refusing a new trial after a trial before *Stearns*, J., and verdict of $2,000 for plaintiff, in an action for negligence resulting in the death of plaintiff's intestate, James Quick.

*Draper, Davis & Hollister*, for appellant.

*McGindley & Cotton*, for respondent.

GILFILLAN, C. J.[1]   Action for injuries to plaintiff's intestate, from

---

[1] Collins, J., took no part in this decision.

which he died, caused, as alleged, by the negligence of the defendant. The deceased was in the employment of the defendant as a miner. The defendant, in its business of mining ore, had sunk a vertical shaft about 300 feet deep. Along this, at intervals, were what are called "levels," being horizontal excavations or tunnels extended from the shaft to reach the ore. Of these there were four, the fourth being, as we understand, at the bottom of the shaft. The first and second from the top had been abandoned; the third was still being worked; and the miners were working at and preparing the fourth. In the shaft was what is called a "cage," being, as we understand, a lift or elevator, running up and down between the bottom of the shaft and the surface, and used for carrying tools and machinery and hoisting dirt, and frequently for carrying the men to and from their work in the shaft or levels. It was customary with defendant, as with all mining companies working by means of such shafts, when opening a new level, to excavate around the sides of the shaft a road-way or passage for the men to pass from one side of the shaft to the other without crossing it. A bell at the surface, with a line extending down to the different levels, was used, according to a prescribed code of signals, of one, two, or three taps, to call for the ascent and descent of the cage. At the time of the killing of the deceased the defendant had not made the road-way around the shaft at level 4, and had not extended the bell line from level 3 to level 4, so that the only means for those working at level 4 to indicate when they desired the cage to be let down or drawn up was to call to the men at level 3, and they signaled by the bell to those running the cage. The deceased had been at work for defendant in other shafts and this shaft five or six months, and about two weeks excavating this shaft between level 3 and level 4. It was necessary for the men working at the level to go from time to time to the other side of the shaft, and, there being no road-way, they had to go across the shaft in order to do so. While crossing on one of these occasions, deceased was killed by the cage, which ran without noise, coming down upon him. He had previously called to the men at level 3 to signal for the cage to be let down, and it had been let down three times, and at the last of the three times he had called to

them to have it drawn up, and not let down again. The cage came down at the time when he was killed, probably, as the evidence indicates, because the men at level 3 did not hear or did not understand his order not to let it down again.

The negligence charged against defendant is in its omission to have the road-way around the shaft, and its omission to have the bell line extended down to level 4.

The sole question in the case is, did the deceased, by continuing in the employment, assume the risks incident to that condition? The risk was of injury from the cage, which worked noiselessly, coming down upon him unawares, when he might be crossing the shaft. And as the rule is unquestioned that a servant is to be held, ordinarily, to assume such risks, such dangers, as are incident to the business, in the place, and with the means in and with which he is required to do the work, provided he knows such risks, and that he is held to know such as are manifest to one of ordinary common sense and observation, or which by the prudent exercise of the senses and common sense may be perceived and appreciated, the question is narrowed down to this: Were the risks which the deceased incurred, the dangers to which he was exposed, and by which he was finally killed, manifest to one of common sense and observation, and could they be ascertained by the prudent exercise of the senses? Of course, where, to ascertain and appreciate the dangers, expert knowledge is required, and the servant possesses it, he is bound to exercise that as well as his senses. In this case is no question of expert knowledge or skill. Any one of common sense would know that if the cage should come down on him while crossing the shaft it would injure, perhaps kill, him. Any one would know that a call from level 4 to level 3 to have the cage let down, or taken up, or stopped, might not be heard, or might be misunderstood, and that so it might be let down when those below were not expecting it. The cage moving without noise, the danger to those below was that it might come down unexpectedly while they were crossing the shaft under it. The case is unlike *Russell* v. *Minn. & St. Louis Ry. Co.*, 32 Minn. 230, (20 N. W. Rep. 147,) and *Wuotilla* v. *Duluth Lumber Co.*, 37 Minn. 153, (33 N. W. Rep. 551,) where the servant might not know the risk in using the defective machinery or

appliances, and unlike *Cook* v. *St. Paul, M. & M. Ry. Co.*, 34 Minn. 45, (24 N. W. Rep. 311,) where the risk could be ascertained only by inspection, and the servant had no opportunity to make it. It is more nearly like *Fleming* v. *St. Paul & Duluth R. Co.*, 27 Minn. 111, (6 N. W. Rep. 448;) *Hughes* v. *Winona & St. Peter R. Co.*, 27 Minn. 137, (6 N. W. Rep. 553;) *Walsh* v. *St. Paul & Duluth R. Co.*, 27 Minn. 367, (8 N. W. Rep. 145;) *Olson* v. *McMullen*, 34 Minn. 94, (24 N. W. Rep. 318;) and *Pederson* v. *City of Rushford*, 41 Minn. 289, (42 N. W. Rep. 1063,)—where the dangers were open to the senses, requiring only their exercise to make them known to the servant.

Order reversed.