DANIEL McLAREN vs. HORACE WILLISTON et al.

Argued Nov. 23, 1891.   Decided Feb. 3, 1892.

48   299
82   410

**Obvious Risks of the Employment Assumed.**—The plaintiff was employed as a brakeman upon a train of logging cars, operated upon a short railway track, with ordinary locomotive engines as motive power, in connection with defendants' sawmill.  The cars were built very low, and the drawbars thereof, used for coupling, were so much lower than that of the engine that when the engine was backed up to a car the drawbar of the car passed under that of the engine; and there was nothing to prevent the tender from striking and colliding with the body of the car, unless the engineer was careful to stop it in time.  The facts were well known to the plaintiff, and the risk and danger of coupling the engine and cars under the circumstances were obvious.  Plaintiff required no further instruction to notify him of such danger.  *Held*, that he assumed the risk of this condition of the cars and engine, and the danger of going between them to couple and uncouple them.

**Negligence of Fellow Servant Assumed.**—Conceding that the case does not fall within the statutory rule established by Laws 1887, ch. 13, plaintiff also took the risk of the negligent acts or conduct of the engineer in the common employment.

**Negligence of Master — Unsafe Instruments Furnished.** — The case presented by the record is not one in which the negligent act of a fellow servant co-operates with the actionable negligence of the master in furnishing unsafe instrumentalities.

Appeal by defendants Horace Williston, James Charnley, A. S. McKinley, and William McKinley from an order of the district court of St. Louis county, *Stearns*, J., made May 9, 1891, refusing a new trial.

The defendants were partners in the business of getting out pine logs· and sawing them into lumber at their mill at Mesaba, in St. Louis county, and operated a short line of railroad to bring the logs to the mill from the woods.   Plaintiff, Daniel McLaren, was employed by them as brakeman on this road, and was injured.

The issues were tried February 5, 1891, before a jury.   Plaintiff

obtained a verdict for $5,500. Defendants moved for a new trial, but it was denied. The facts are stated in the opinion.

*Kitchel, Cohen & Shaw*, for appellants.

Plaintiff assumed the risks of his employment. Those risks included the dangers from the use of the engine whose drawhead was higher than that of the car, and the dangers from the negligence of the engineer, his fellow servant. *Greene* v. *Minneapolis & St. L. Ry. Co.*, 31 Minn. 248; *Fleming* v. *St. Paul & D. R. Co.*, 27 Minn. 111; *Hughes* v. *Winona & St. P. R. Co.*, Id. 137; *Walsh* v. *St. Paul & D. R. Co.*, Id. 367; *Clark* v. *St. Paul & S. C. R. Co.*, 28 Minn. 128; *Cook* v. *St. Paul, M. & M. Ry. Co.*, 34 Minn. 45; *Sherman* v. *Chicago, M. & St. P. Ry. Co.*, Id. 259; *Woods* v. *St. Paul & D. R. Co.*, 39 Minn. 435; *Pederson* v. *City of Rushford*, 41 Minn. 289; *Smith* v. *Winona & St. P. R. Co.*, 42 Minn. 87; *Ehmcke* v. *Porter*, 45 Minn. 338.

As to the obviousness of the danger, and plaintiff's knowledge of the danger, this case differs from the following: *Russell* v. *Minneapolis & St. L. Ry. Co.*, 32 Minn. 230; *Hungerford* v. *Chicago, M. & St. P. Ry. Co.*, 41 Minn. 444.

Among the risks assumed by plaintiff was the risk arising from the negligence of fellow servants. *Walsh* v. *St. Paul & D. R. Co.*, 27 Minn. 367; *Hefferen* v. *Northern Pac. R. Co.*, 45 Minn. 471.

The rule of the assumption of risk is not changed, or in any manner affected, by the circumstance that plaintiff had no prior experience as a brakeman, and was originally employed on the log deck in defendants' mill. *Anderson* v. *L. T. Sowle Elevator Co.* 37 Minn. 539; *Berger* v. *St. Paul, M. & M. Ry. Co.*, 39 Minn. 78. Even a minor assumes the risks of known dangers. *Anderson* v. *Morrison*, 22 Minn. 274; *Hefferen* v. *Northern Pac. R. Co.*, 45 Minn. 471, 476; *Gilbert* v. *Guild*, 144 Mass. 601; *McGinnis* v. *Canada Southern Bridge Co.*, 49 Mich. 466.

Plaintiff's injuries occurred through the negligence of a fellow servant. *Lindvall* v. *Woods*, 41 Minn. 212; *Bergquist* v. *City of Minneapolis*, 42 Minn. 471; *Fraser* v. *Red River Lumber Co.*, 45 Minn. 235.

*Edson & Hanks*, for respondent.

The use of such defective machinery was negligent *per se.* It was not error to so charge the jury. Shear. & R. Neg. (3d Ed.) p. 13, and note; *Catawissa R. Co.* v. *Armstrong*, 52 Pa. St. 282; *Dascomb* v. *Buffalo & S. L. R. Co.*, 27 Barb. 221.

The plaintiff, under all the circumstances at the time of the injury, was not guilty of contributory negligence in going between the engine and the car to pull out the coupling pin of the engine in obedience to the command of his superior, the engineer. There is no evidence in this action that, prior to the accident, the plaintiff knew and appreciated the fact that, by standing on the footboard of the engine and pulling the pin, he assumed the risk of being crushed between the car and the engine, by any negligence of the engineer. *Wuotilla* v. *Duluth Lumber Co.*, 37 Minn. 153; *Russell* v. *Minneapolis & St. L. Ry. Co.*, 32 Minn. 230.

It is one thing to be aware of defects in the instrumentalities or plan furnished by the master for the performance of his service, and another thing to know and appreciate the risks resulting or which may follow from such defects. The mere fact that the servant knows the defects may not charge him with contributory negligence or the assumption of the risks growing out of them. The question is, did he know, or ought he to have known, in the exercise of common sense and prudence, that the risks, and not merely the defects, existed? *Cook* v. *St. Paul, M. & M. Ry. Co.*, 34 Minn. 45.

The duty devolves upon the master, before putting a servant, known to him to be unskilled, in charge of dangerous machinery with the operation of which he is not acquainted, to instruct and qualify him for such new duty. If the servant is incompetent, or the master discontinues the instruction before it is completed, and, in consequence, the servant is injured, the master is liable. *Brennan* v. *Gordon*, 118 N. Y. 489.

The question of plaintiff's contributory negligence was properly submitted to the jury, and their verdict is abundantly sustained by the evidence, and is conclusive. *Detroit & M. R. Co.* v. *Van Steinburg*, 17 Mich. 99; *Abbett* v. *Chicago, M. & St. P. Ry. Co.*, 30 Minn. 482; *City of St. Paul* v. *Kuby*, 8 Minn. 154, (Gil. 125;) *Johnson* v.

*Winona & St. P. R. Co.*, 11 Minn. 296, (Gil. 204;) *Stoker* v. *City of Minneapolis*, 32 Minn. 478; *Corey* v. *Northern Pac. R. Co.*, Id. 457.

This injury was caused by failure of defendants to provide suitable and safe machinery, and the negligence of the engineer. The two combined caused this injury, and it is impossible to separate them. When an injury is caused partly by the negligence of another employe, and partly by the failure of the master to provide proper and suitable instrumentalities to work with, the negligence of the co-servant will not exonerate the master from the consequences of his own fault. *Ellis* v. *New York, L. E. & W. R. Co.*, 95 N. Y. 546; *Stetler* v. *Chicago & N. W. R. Co.*, 46 Wis. 497; *Smith* v. *Memphis & L. R. R. Co.*, 18 Fed. Rep. 304; *Ransier* v. *Minneapolis & St. L. Ry. Co.*, 32 Minn. 331; *Franklin* v. *Winona & St. P. R. Co.*, 37 Minn. 409.

VANDERBURGH, J. At and prior to the time of the accident which occasioned the injuries to the plaintiff complained of in this action, the defendants, as partners, were engaged in manufacturing lumber at their sawmill at Mesaba, in St. Louis county, and, in connection therewith, owned and operated for hauling logs to their mill a short line of railroad, running from the mill to their logging camp, a mile and one half in length. They used a locomotive engine to haul the logging cars over this line, whose coupling attachment was of the usual height and pattern, and it was also used in switching freight cars of the ordinary height used on the railway line on which their mill is situated. But the logging cars were made lower than the ordinary freight cars, and the drawheads for coupling were at least 16 inches lower than that of the engine; so that the coupler used was necessarily a long, crooked link, bent to correspond with the difference in the height of the engine and the cars. The plaintiff had been employed about the mill nearly a year before the accident, but had no experience as a brakeman upon cars, though he had previously worked on the Omaha road as a fireman for a few months. At or about the 1st of May, 1890, he commenced to work at increased wages as a brakeman on the logging train. By the direction of the superintendent, one of the defendants' employes, a former brake-

man, explained to him the nature of the business, and showed him how to set the brakes and do the switching about the mill, but did not explain to him the danger in coupling the engine to the logging cars. He had observed the difference between the couplings of these cars and those in ordinary use about the mill, and the difference in the links used and in the height of the cars; and during five or six days before he was injured he was employed in the regular duties of brakemen about the train, coupling and uncoupling the engine with the link in question several times each day. This link was about three feet long, and when in position, with each end turned or bent so as to pass into the respective drawheads or bumpers of the engine and car attached, left them about that distance apart. At the time of the accident the logging train (seven cars and the engine) was stationed in the woods, and was being loaded with logs. It was on a descending grade, and the engine stood "reversed," holding the train steady. While in this position the plaintiff set the brakes on the hind cars, and blocked the trucks of the forward car, as he had been instructed; and according to the testimony in his behalf, on which the recovery must have been based, the engineer directed him to uncouple, and said they would go down and "wood up" the engine. He then went in between the car and engine, and, standing on the footboard, pulled out the coupling pin from the drawhead of the engine, and gave the signal to the engineer to go ahead. The engine then moved forward four or five feet, and "then all of a sudden it came back." The difference in the height of the bumpers was so great that one passed over the other, and the tender of the engine ran back against the logs; and the plaintiff, who had remained on the footboard, was thrust back against the same, and would have been crushed but for the fact that one log projected more than the others, and, receiving the shock of the collision, prevented a worse injury, though as it was he suffered serious injury. The plaintiff, describing the coupling in his testimony as he saw and understood it at the time of the accident, states that the top of the drawhead of the car was sixteen (16) to eighteen (18) inches below the bottom of that of the engine; so that, when the engine was

backed down, there was nothing to hold it from going backward to the body of the car, if the engineer did not stop it in time.

Upon these facts the court charged the jury "that the difference in the height of the bumpers was so great that they would have a right to assume that the plaintiff, having been there six days, knew that the bumper of the engine overlapped that of the car." And this was undoubtedly true. The plaintiff unquestionably saw and knew that the bumpers afforded no protection when the car was uncoupled from the engine; and he knew, or ought to have known, that if the engine was reversed, and backed up again, his position on the footboard, between the tender and the loaded car, was a dangerous one. The facts were known, and the risk was obvious. It needed no special experience or instruction to notify him of the danger. The danger of coupling or uncoupling the cars, then, was one which he must be held to have assumed.

It is not claimed that the case falls within the statutory rule established by Laws 1887, ch. 13, being "An act to define the liabilities of railroad companies in relation to damages sustained by their employes." As the question of the construction of that act has not been fairly raised in this case, and is not referred to in the briefs of counsel, it will not be considered here. We must assume, therefore, that the plaintiff also took the risk of any negligent act or mistake of the engineer, in the common employment, which might result in an accident. There is no claim that the defendant did not use due care in the selection of competent and reliable servants, including the engineer in question. But the plaintiff says that there was no apparent danger. "If he had gone ahead, as he got the signal to,—if he had not come back,—there would have been no danger." He simply miscalculated the action of the engineer. Either through his mistake or negligence, the engine was suddenly backed up to the car. From the evidence of the engineer, it is clear that he had an entirely different understanding as to the facts in reference to the signal; but, whichever may be right, it is evident that the acts or negligence of the engineer were among the ordinary risks of the employment, which the plaintiff assumed. Having assumed the

risk from both these causes, we are unable to see that plaintiff has made out a case of liability against the defendant; and, on any theory of the action, it does not essentially differ from the case of *Quick* v. *Minnesota Iron Co.*, 47 Minn. 361, (50 N. W. Rep. 244,) decided at the present term. When the plaintiff clearly understood that there was nothing to keep the tender from colliding with the body of the car when uncoupled, he assumed the risk of the condition of the cars. *Kelly* v. *Abbot*, 63 Wis. 307, (23 N. W. Rep. 890.) It was not a case, therefore, where the negligent act of a coemploye co-operates with the actionable negligence of the master, as the plaintiff claims, and in this respect differs from *Ransier* v. *Minneapolis & St. L. Ry. Co.*, 32 Minn. 331, (20 N. W. Rep. 332,) and *Franklin* v. *Winona & St. P. R. Co.*, 37 Minn. 409, (34 N. W. Rep. 898,) relied on by him.

Order reversed.

(Opinion published 51 N. W. Rep. 373.)