MARY ELLEN CRESWELL, widow of CHARLES CRESWELL, deceased, plaintiff below, plaintiff in error, *vs.* THE WILMINGTON AND NORTHERN RAILROAD COMPANY, defendant below, defendant in error.

*Case—Personal Injuries—Negligence—Damages—Fellow Servant— Master and Servant—Harmless Error.*

1. If the conductor of a shifting crew, when about to couple engine and car omits to give the proper signal to the engineer when he sees the engine approaching at a dangerous speed, or attempts the coupling when the engine and car are approaching each other at an unsafe speed, or makes the attempt in an unskillful manner, he is guilty of such negligence as would defeat recovery. But in the absence of any direct evidence as to what he did, or omitted to do, the inference of his negligence from the position in which his body was found after the collision would not alone be sufficient to justify the withdrawal of the case from the jury.

2. The rule of law which makes the master liable when the injury is caused by the negligence of a fellow servant combined with the negligence of the master must be limited to cases where there has been negligence on the part of the master in the selection of the negligent fellow-servant, or some other negligence of the master for which he would be responsible if it had been the sole cause of the injury.

3. It is not incumbent on the defendant to show that the accident was not caused by his negligence. The ground upon which a servant recovers against a master for injuries sustained ¡in his service is, that such injuries were caused by the violation or neglect of some duty which the master owed to the servant. If there was no such duty there can be no such liability. It is not the duty of the master to furnish appliances of the best and most improved kind.

4. While the servant by entering into a hazardous employment assumes its ordinary risks, and while by the continued use, without complaint, of apparatus known to him to be defective, he assumes the risks of the apparatus, he does not assume such risks when the defects are latent, unknown to him, and not discoverable by the exercise of due care. Whether the servant is chargeable with such knowledge and consequent assumption of risk, depends upon the facts of each case. Direct proof of such knowledge is not always necessary. It is often to be inferred from the character of the apparatus or defect, or from the age, experience or employment of the servant. The assumption of risk arising from an insufficient number of men for the conduct of the work rests upon the same ground as the assumption of risk arising from the use of machinery known to be defective and dangerous.

5. Where the servant had been engaged in the same kind of work for years

CRESWELL vs. W. & N. R. R. CO. 211

OPINION OF COURT.

before his injury under like circumstance and conditions as at the time of injury, and made no complaint, he must be presumed to have known the character of the apparatus and to have assumed the risk.

6. A servant cannot recover from the master for injuries caused by the negligence of a fellow servant, in the selection of whom the master had used due diligence; and it is well settled that trainmen engaged in operating the same train are to be regarded as fellow servants.

7. One cannot be liable for the combination and co-operation of any number of causes for no one of which he is liable. If none of the alleged causes of the accident are sufficient to render the defendant liable, it is impossible that the combination of some or all should produce this result.

8. No judgment should be reversed in a court of error when it is clear that the error could not have prejudiced the rights of the party against whom the ruling was made.

*(June 19, 1899.)*

NICHOLSON, CH., and SPRUANCE and GRUBB, J. J., sitting.

*Anthony Higgins* and *Alfred Constable* for plaintiff in error.

*Lewis C. Vandegrift* and *George Gray* for defendant in error.

Supreme Court, June Term, 1899.

WRIT OF ERROR to the Superior Court for New Castle County (No. 4, June Term, 1898).

The facts, contentions of counsel and authorities cited, sufficiently appear in the opinion of the Court.

SPRUANCE, J. :—This was an action in the Superior Court for New Castle County brought by the plaintiff, Mary Alice Creswell, the widow of George Creswell, against the defendant, the Wilmington and Northern Railroad Company, for the recovery of damages for the death of the said George Creswell, alleged to have been occasioned by the negligence of the defendant on the tenth day of April, 1896.

Under the instruction of the Court, the jury rendered a ver-

dict for the defendant. To this instruction and certain rulings as to the admission of testimony the plaintiff excepted, and took the writ of error upon which the case comes into this Court.

The said George Creswell, while in the service of the defendant and in the act of coupling an engine of the defendant to a freight car of the Baltimore and Ohio Railroad Company, was crushed and killed between the said engine and car.

At the time of the accident he was engaged in shifting cars upon the tracks of the defendant, near Pigeon Point on the Delaware River, there to be transferred to barges.

The engine was known as shifting engine No. 2, and was used only in the barge work in which it was then employed.

The shifting crew consisted of Creswell the conductor, Tyrell the brakeman, and Slifer the engineer.

Slifer was not examined. Tyrell was the only person examined who was present at the time of the accident, and his testimony furnishes all the direct evidence we have upon the subject. His account is substantially as follows : Two empty freight cars which had just been pushed by this engine against two loaded freight cars, were from the impact receding toward the approaching engine, Tyrell being at the brake on the end of the car nearest the engine with one foot on the brake platform (which was about eight feet above the platform to which the draw bar was attached), one leg on top of the car holding the brake wheel, and with his back to the engine. He did not know how Creswell got to the place of the accident, or what he did before the accident. When he first saw Creswell he was standing outside of the rail, leaning in, with his face to the car and his back to the engine, and crushed between the sill of the car and the engine ; the drawhead of the engine and the draw bar of the car having slid past each other.

At the time of the collision he estimates that the speed of the engine was from three to four miles an hour, and the speed of the car about a mile and a half an hour.

The plaintiff claims that the death of Creswell was caused by

the negligence of the defendant, by the combination and co-operation of the following causes, to wit:

(1) The excessive speed of the engine; (2) the absence of brakes upon the engine; (3) the inequality in the height of the drawhead of the engine and the drawbar of the car; (4) the unsafe drawhead upon the engine, and (5) the insufficient number of men constituting the shifting crew.

The speed of the engine, especially in view of the speed of the approaching car, was no doubt excessive, but this could have been regulated by the engineer according to his own judgment, or upon order or signal from Creswell, the conductor, unless the appliances for this purpose were not sufficient. There is no evidence of any such order or signal from Creswell, or of any unsuccessful attempt by the engineer to stop or slacken the speed of the engine. The engine was not equipped with brakes, but was controlled by a reverse lever, which the defendant claims is not unusual with shifting engines, and better adapted to the work in which this engine was employed than brakes.

In respect to the inequality in the height of the drawhead of the engine and the drawbar of the car, the evidence was that the centre of the drawhead on the engine was in the rear, thirty-three inches above the top of the rail, and in the front, about an inch lower. There was no direct evidence as to the height of the drawbar of this car. There was evidence of some measurements of certain other freight cars of the Baltimore and Ohio Railroad Company, showing the centre of the drawbars of the cars measured to be generally thirty-four, and in one case, thirty-five inches above the rail.

The plaintiff insists that the one pocket drawhead used upon this engine was unsafe, and that a two or three pocket drawhead would not have slid past the drawbar of the car and allowed the engine and car to come together as they did.

The defendant contends that the one pocket drawhead used was better adapted to the particular work in which this engine was

engaged, and for this purpose refers to the testimony that the work of shifting and coupling of cars at the time of the accident was preparatory to loading cars upon a barge, which work was also done by the same engine; that in loading the cars they were pushed by the engine from the wharf to the barge over a bridge or slip, which rose and fell with the barge, it being attached to the wharf by hinges and to the barge by pins and chains; that similar slips were used at other points on the river to which the cars were transported; that in this work it was necessary that the drawhead of the engine should be strong and allow considerable play, and that in these respects and for this work the one pocket drawhead used was superior to the two or three pocket drawhead.

It appears from the testimony that five is the usual number of a shifting crew in yard work where there are passing trains, many cars to be handled and speed often necessary, but that in the barge work, in which Creswell was engaged, as there were no passing trains, comparatively few cars to be handled, and usually no need of great speed, a crew of three had long been used and found sufficient.

There is no evidence that the engineer or brakeman were incompetent, or that they had not been selected by the defendant with due care.

If Creswell omitted to give the proper order or signal to the engineer when he saw the engine approaching at a dangerous speed, or if he attempted the coupling when he saw the engine and car approaching each other at an unsafe speed, or if he attempted the coupling in an unskillful manner, he was guilty of negligence, which would defeat recovery; but in the absence of any direct evidence as to what he did or omitted immediately before the accident, the inference of his negligence from the position in which he was found after the collision, was not alone sufficient to justify the withdrawal of the case from the consideration of the jury.

In *Wheatley vs. P., W. & B. R. R. Co., 1 Marvel 305*, it was said, that if the injury be caused by the negligence of a fellow ser-

CRESWELL vs. W. & N. R. R. CO.        215

OPINION OF COURT.

vant combined with negligence on the part of the master, the latter is liable. This must be limited to cases where there has been negligence on the part of the master in the selection of the negligent fellow servant or some other negligence of the master for which the law would hold him responsible if it had been the sole cause of the injury. In other words, while contributory negligence of the servant injured will defeat his recovery against the negligent master, contributory negligence of a fellow servant will not defeat such recovery.

*Grand Trunk Railway vs. Cummins, 106 U. S., 700.*

The material question is, was there any evidence of negligence on the part of the defendant which would have warranted the jury in finding a verdict for the plaintiff. The burden of proving such negligence was on the plaintiff. It was not incumbent on the defendant to show the cause of the accident or that it was not caused by the defendant's negligence.

The ground upon which a servant recovers against a master for injuries sustained in his service is, that such injuries were caused by the violation or neglect of some duty which the master owed to the servant. If there was no such duty there can be no such liability. It is not the duty of the master to furnish appliances of the best and most improved kind.

*Thorn vs. New York City Ice Co., 46 Hun, 497; Spencer vs. N. Y. Central Ry. Co., 67 Hun, 196.*

In the recent case of *Texas and Pacific Railway Co. vs. Archibald, 170 U. S., 671-2 (1898)*, the Supreme Court said, that it is the duty of the employer " to furnish appliances free from defects discoverable by the exercise of ordinary care." * * * * " Where an employee receives for use a defective appliance, and with knowledge of the defect continues to use it without notice to the employer he cannot recover for an injury resulting from the defective appliance thus voluntarily and negligently used." * * * * " He has a right to assume that the employer will use reasonable care to make the appliances safe and to deal

with those furnished relying on this fact, *subject of course to the exception* by which when an appliance is furnished to an employee in which there exists a defect known to him or plainly observable by him, he cannot recover for an injury caused by such defective appliance, if with the knowledge above stated, he negligently continues to use it."

In *Davidson vs. Cornell, 132 N. Y., 228,* the Court said : " It is, as a general rule, true that a servant entering into employment which is hazardous assumes the usual risks of the service, and those which are apparent to ordinary observation, and when he accepts or continues in the service with knowledge of the character of structures from which injury may be apprehended, he also assumes the hazards incident to the situation. *Gibson vs. Erie Railway Co., 63 N. Y., 449 ; Deforest vs. Jewett, 88 N. Y., 264 ; Sweeney vs. Beslin & Jones Envelope Co., 101 N. Y., 520 ; Hickey vs. Taaffe, 105 N. Y., 26 ; Williams vs. Delaware & Lackawanna R. R. Co., 116 N. Y., 628."*

There is no liability on the part of the master in respect to risk which the servant has voluntarily assumed, the maxim being, " *volenti non fit injuria.*"

After full consideration of the argument in behalf of the plaintiff, we are unable to accede to the modification of the well established rule as declared in *Texas and Pacific Railway Company vs. Archibald, Davidson vs. Cornell* and many other cases, by adding that the defects must not only be obvious, but also necessary in the sense that the appliance could not possibly be of a better kind or in better condition. The gist of the exception which discharges the master from liability is that the appliance is not of the best kind that the master could have furnished or that it is not in as good condition as he could have put it—but that these defects being obvious, and known to the servant, he by the continued use of such appliance agrees to assume the risk of injury from such use, and thereby discharges the master from liability on that account. While the servant by entering into a hazardous employment as-

sumes its ordinary risks, and while by the continued use, without complaint, of apparatus known to him to be defective, he assumes the risks of such apparatus, he does not assume the risks of apparatus the defects of which are latent, unknown to him, and not discoverable by the exercise of due care. Whether the servant is chargeable with such knowledge and consequent assumption of risk, depends upon the facts of each case. Direct proof of such knowledge is not always necessary. It is often to be inferred from the character of the apparatus or defect, or from the age, experience or employment of the servant. Such knowledge and assumption of risk have frequently been inferred in cases similar to this. In In-dianapolis, *B. & W. R. R. Co. vs. Flannigan, 77 Ill., 365,* the plaintiff below was a freight conductor whose duty in part was to couple cars. The Court held that if a servant who enters a railway company's employ and knows that the company is operating a class of cars that are unsafe, and continues in the employ, he will assume the risks and hazards of the service and cannot recover for personal injury from the use of such a class of cars.

In *Brooks vs. Northern Pacific Railway, 47 Fed., 687, (1891)* the drawhead of a switch engine was too short. The Court said : " The plaintiff, in accepting employment from a defendant as a switchman in the yard in which this engine was used must be held to have assumed the risk of all injuries to himself ordinarily incidental to the situation including such as were liable to occur in consequence of any visible defect in the machinery and appliances supplied for use in connection with his work. The alleged defect was visible and should have been, if it were not in fact known to the plaintiff. He cannot be heard to say that he did not know of the existence of the defect, or that he could not discover it, for he must be regarded as guaranteeing his own competency for the situation in which he was employed, which necessarily required the possession on his part of sufficient knowledge of engines, drawheads and coupling apparatus, to be able to recognize, upon seeing it, a dangerous defect of the character described."

In *Mich. Cent. Ry. vs. Smithson, 1 A. & E. R. R. Cases* (*Mich. 1881*), a brakeman was injured by unusual coupling on the cars. Judge Cooley held that danger was apparent and obvious, and that there was no liability upon the part of the railroad company.

In *L. & N. Ry. Co. vs. Boland, 53 A. & E. R. R. Cases, 169* (*Ala. 1892*) the Court said : "A view of the bumpers and drawheads, as attached to the car, should be sufficient notice to a man of average intelligence, of the risk incident to the coupling of such a car. The risk is apparent, and incident to his employment, and there in no liability on the part of the Railway Company."

In *McLaren vs. Willston, 48 Minn., 299*, the plaintiff was a brakeman. The bumper on the car was lower than that upon the engine. The Court held that the plaintiff "assumed the risk of this condition of the cars and engine."

To the same effect are, *Brewer vs. F. P. M. Ry., 56 Mich., 620 ; Arnold vs. D. & H. Co., 125 N. Y., 15; Muldowaney vs. Ill. Cent. R. R., 39 Iowa, 615 ; Belair vs. C. & N. W. Ry. Co., 43 Iowa, 662.*

It is not claimed that the drawbar or other coupling apparatus of the car of the Baltimore & Ohio Railroad Company, against which Creswell was crushed, was out of repair or of an unusual kind, or that he had never coupled cars of that company before. As was said by Judge Shires in *Woodworth vs. St. P. M. & M. Ry., 18 Fed., 282*, "When a person enters into the employ of a railroad company, he assumes all the usual risks and hazards. We all know it to be a fact that cars are received and coupled every day by the necessities of business though having drawheads of different make and construction."

The assumption of the risk arising from an insufficient number of men for the conduct of the work rests upon the same ground as the assumption of risk arising from the use of machinery known to be defective and dangerous.

CRESWELL vs. W. & N. R. R. CO.             219

OPINION OF COURT.

*M. R. & L. E. Ry. Co. vs. Barber, 5 Ohio State, 541 (1856)*, was an action for an injury sustained by a person while acting as conductor of a freight train. The Court held that it is the duty of a railroad company to furnish proper machinery and appliances and a sufficient number of hands for the safe management of trains, and for such delinquency, the conductor has a right to refuse to run his train. But when, under such circumstances he takes charge and runs his train for a length of time, without a sufficient number of hands, or with obvious defects in the machinery and appliances, he voluntarily assumes the risk and waives the obligation of the company in this respect, as to himself, and if injured by such delinquency, he is without remedy against the company.

In *Tex. & P. Ry. Co. vs. Rogers, 6 C. C. A., 403*, the plaintiff claimed that the defendant was negligent in not furnishing an adequate number of men to do certain work in which he was assisting when injured. The Court said : " In our opinion, if a sufficient number of men were not furnished to assist in the work, that is 'a patent defect. A servant is bound to see patent and obvious defects in appliances furnished him, and assumes all patent and obvious risks, as well as those incident to the business; and when he knows, or ought to know of the defect in the appliances, and continues to work with the same, and receives injuries therefrom, he is treated as being guilty of contributory negligence and cannot recover."

There is no evidence that any of the apparatus or appliances used at the time of the accident were out of repair, or that there was any latent defect in any of them.

If, as claimed by the plaintiff, the reverse lever without a brake and the single pocket drawhead on the engine were defective, *i. e.*, not suitable for the use to which they were applied, these defects, as well as the risk in the use of such apparatus, were certainly obvious, that is, " discoverable by the exercise of ordinary care "—" plainly observable "—" apparent to ordinary observation"—by any person having the knowledge and experience requisite for the position held by Creswell.

Beside this Creswell had special opportunities to observe and know all of these things.

He had, as conductor, been engaged in the same barge work at Pigeon Point for years before his death, frequently doing the coupling himself, and using the same engine without brakes and equipped with the same reverse lever and single pocket drawhead and with a crew of only three, including himself, as at the time of his death. There is no evidence that he ever made any complaint as to the defective character or insufficiency of any of the apparatus or as to the insufficiency of the crew. Under these circumstances he must be presumed to have known the structure and character of these appliances, and their defects, if such there were, and to have assumed the risk resulting from their use and the risks from doing the work with a crew of three men.

No citation of authority is required for the establishment of the proposition that a servant cannot recover from the master for injuries caused by the negligence of a fellow servant, in the selection of whom the master had used due diligence. There has been much controversy as to who are fellow servants, but it is well settled that trainmen engaged in operating the same train are to be regarded as such.

In *Stafford vs. C. B. & Q. Ry., 114 Ill., 244*, the plaintiff, a switchman, and the negligent engineer of the same crew were held to be fellow servants. The Court said:

"Where one servant is injured by the negligence of his fellow servant, the duties of both being such as to bring them into habitual association, so that they may exercise an influence upon each other, promotive of proper caution, and the master is guilty of no negligence in the employment of the servant causing the injury, the master will not be liable for the injury."

In *St. L. &c. Ry. vs. Britz., 72 Ill., 256*, the engineer, brakeman and shovelers on a construction train were held to be fellow servants.

In *MacLaren vs. Willston, 48 Minn., 299*, it was said by the

Court, "That the plaintiff, the brakeman, took the risk of the negligent acts or conduct of his fellow servant, the engineer, in the common employment."

In *Balt. & Ohio R. R. vs. Baugh, 149 U. S., 368,* it was held that the engineer and fireman of an engine running alone without a train were fellow servants, and that the fireman could not recover from the company for injuries caused by the negligence of the engineer.

In *Wheatley vs. P., W. & B. R. R. Co., 1 Marvel, 305,* above cited, it was held that the fireman of one train and the brakeman or flagman of another train, on the same division of a railroad were fellow servants, and that the company was not liable for injuries resulting to one of them solely from the carelessness of the other.

There can be no question that Slifer, the engineer, was the fellow servant of Creswell, the conductor, and that there can be no recovery in this action for injuries caused by the negligence of the engineer.

It is insisted by the plaintiff that while Creswell might have been familiar with each of these appliances, known the defects of each, and the danger from too small a crew, he did not understand the danger from the combination and co-operation of all these defects. But there was nothing unusual in the use, in the combination or co-operation, of these instruments at the time of the accident. In coupling cars and other work of this engine and crew, these instruments could be used only in combination and co-operation, and they had been so used under Creswell's direction for a long time, and he must be presumed to have known the dangers from such use.

One cannot be held liable for the combination and co-operation of any number of causes for no one of which he is liable. If, as we have shown, none of the alleged causes of the accident are sufficient to render the defendant liable, it is impossible that the combination or co-operation of some or all of them should produce this result.

The *first* assignment of error is, that the Court erred in the direction to the jury to render a verdict for the defendant.

In *Commissioners vs. Clark, 94 U. S., 284,* the Court said: "Decided cases may be found where it is held that if there is a *scintilla* of evidence in support of a case, the Judge is bound to leave it to the jury; but the modern decisions have established a more reasonable rule; to wit, that, before the evidence is left to the jury, there is or may be in every case a preliminary question for the Judge, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed."

In *Randall vs. Balt. & Ohio R. R., 109 U. S., 482,* Justice Gray, delivering the opinion of the Supreme Court, said: "It is the settled law of this Court, that where the evidence given at the trial, with all inferences that the jury could justifiably draw from it, is insufficient to support a verdict for the plaintiff, so that such a verdict, if returned, must be set aside, the Court is not bound to submit the case to the jury, but may direct a verdict for the defendant."

In *Metropolitan Ry. Co. vs. Jackson, 3 App. Cas., 193,* the House of Lords held that it is for the Judge to say whether any facts have been established by sufficient evidence from which negligence can be reasonably and legitimately inferred; and it is for the jury to say whether from those facts when submitted to them, negligence ought to be inferred.

In *Wheatley vs. Phila., Wil. & Balt. R. R., 1 Marvel, 315,* the Court said: "Where the evidence on the part of the plaintiff is such, that if a verdict is found for the plaintiff, the Court would be constrained to set it aside, it is not only reasonable but it is the duty of the Court to stop the case at that point."

After a careful examination of the record, we are satisfied that there was no evidence of such negligence on the part of the defendant company as was sufficient to make it liable in this action,

CRESWELL vs. W. & N. R. R. CO. 223

OPINION OF COURT.

and no evidence from which the jury would have been justified in drawing the inference of such negligence. The first assignment of error is therefore overruled.

The remaining assignments of error are in substance as follows:

*Second and Third.* That the Court erred in refusing to allow testimony as to drawheads used on other roads.

*Fourth.* That the Court erred in refusing to allow testimony as to the course of business on another road, and how cars were put on barges of that road on Christiana Creek.

*Fifth.* That the Court erred in refusing to allow a witness to testify in reply to the question whether he had measured the height of the draw bars on "certain cars on the Baltimore & Ohio Railroad."

*Sixth.* That the Court erred in refusing to sustain the objection to "the above line of testimony as not in cross examination, but as being an effort to inject into the plaintiff's case testimony in favor of the defendant."

*Seventh, Eighth and Ninth.* That the Court erred in refusing to overrule as not proper on cross examination, certain questions as to the presence of Creswell while certain appliances and conditions relating to loading cars on barges were as described by the witness on his direct examination.

*Tenth and Eleventh.* That the Court erred in refusing to allow certain witnesses to testify as experts.

In view of the ground upon which the first assignment of error is overruled, the remaining assignments are not important, even if some or all of the rulings objected to were erroneous. "No judgment should be reversed in a Court of Error when it is clear

that the error could not have prejudiced, and did not prejudice, the rights of the party against whom the ruling was made." *Lancaster vs. Collins, 115 U. S., 227; Fisher vs. State, 1 Pennewill, 388.* All of the said remaining assignments of error are overruled upon the following grounds:

*The Second and Third.*—As immaterial, as it did not appear that the drawheads referred to were used under conditions similar to those in this case.

*The Fourth.*—As immaterial, as it did not appear that the conditions were similar to those in this case.

*The Fifth.*—As irrelevant, because it did not appear that the height of the drawbars measured by the witness were the same as that of the drawbar in this case, or that the witness knew of the height of the latter.

*The Sixth.*—Because, *first,* there was no motion to strike out the whole or any specified part of the cross examination. *Second,* it does not appear from the objection or exception taken what part of the cross examination was objected to, and *third,* sufficient ground for the cross examination had been laid by the direct examination of the witness.

*The Seventh, Eighth and Ninth.*—Because sufficient ground for the cross examination had been laid by the direct examination of the witness.

*The Tenth and Eleventh.*—Because it had not been shown that the witnesses were qualified to testify as experts in the manner proposed.

The judgment below is affirmed.