VIOLA M. SUND, an infant by her next friend, John A. Sund, *vs.* WILMINGTON & PHILADELPHIA TRACTION COMPANY. JOHN A. SUND *vs.* SAME.

1. STREET RAILROADS—NEGLIGENCE AS TO CHILD CARRIED UNDER CAR STRIKING SIGNBOARD ON STREET HELD FOR JURY.

In actions against a street railroad company for injuries to a girl of 10 years, when playing on a signboard blown down on the street, which a trolley car struck and carried under the car, the child with it, case *held* for the jury under evidence.

2. NEGLIGENCE—HAPPENING OF ACCIDENT NOT PROOF.

The fact of an accident whereby injuries are sustained does not in itself, if not within the control of defendant or its servants charged with causing the accident, establish the fact that plaintiff's injuries were the result of negligence.

3. NEGLIGENCE—MUST BE PROVED.

Negligence is never presumed, but must be proven; and the burden of proving negligence to the satisfaction of the jury by a preponderance of the evidence rests on the party alleging it.

4. NEGLIGENCE—DEFINITION.

Negligence is defined as the want of ordinary care; that is, the want of such care as a reasonably prudent and careful person would exercise under similar circumstances.

Syllabus.

5.  NEGLIGENCE—RECOVERY MUST BE FOR NEGLIGENCE ALLEGED.

Plaintiffs cannot recover for any negligence, except as alleged.

6.  EVIDENCE—JURY SHOULD RECONCILE TESTIMONY; IF THEY CANNOT, SHOULD BE GOVERNED BY TESTIMONY OF MOST CREDIBLE WITNESSES.

When the evidence is conflicting, it is the duty of the jury to reconcile it, if they can, and, if they cannot, to accept it, and be governed by the testimony of those witnesses whom they think most entitled to credit and belief.

7.  EVIDENCE—MATTERS JURY MAY CONSIDER IN DETERMINING CREDIBILITY OF WITNESSES STATED.

In determining the credibility of witnesses and the degree of credit that should be given their testimony, the jury should consider their bearing on the stand, their apparent fairness or unfairness, their interest or bias, if any, etc.

8.  EVIDENCE—PREPONDERANCE OF TESTIMONY MEANS PREPONDERANCE OF WEIGHT AND VALUE, NOT GREATER NUMBER OF WITNESSES.

A preponderance of evidence does not necessarily mean the greater number of the witnesses, but the weight and value of their testimony.

9.  DAMAGES—MEASURE OF DAMAGES FOR PERSONAL INJURIES TO AND FOR LOSS OF SERVICES OF DAUGHTER STATED.

Plaintiff, a girl of 10, injured by defendant street railroad's car, if entitled to recover, was entitled to recover a sum reasonably compensating her for her injuries, including pain and suffering in the past, and such as might come to her in the future, and for any permanent injuries received; while her father, suing for loss of services, was entitled to reasonable compensation for expenses for professional and hospital services in the care and attention given his daughter.

10.  STREET RAILROADS—EVIDENCE SUFFICIENT TO SUSTAIN RECOVERY FOR INJURIES TO CHILD.

In an action for injuries to a girl of 10, who, while playing on a signboard fallen in the street, was thrown under a trolley car, which struck the signboard, evidence *held* sufficient to warrant verdicts for plaintiffs.

(*December* 2, 1920)

BOYCE, J., sitting.

*William W. Knowles* for plaintiffs.

*Andrew C. Gray* (of Ward, Gray and Neary) for defendant.

Superior Court for New Castle County, November Term, 1920.

SUMMONS CASES, Nos. 126 and 127, May Term, 1920.

Actions by Viola M. Sund, by her next friend, and by John A. Sund, her father, against the Wilmington & Philadelphia Traction Company. Verdict for the plaintiffs. Motions for new trials denied.

Evidence was offered for plaintiffs to show that at about 8 o'clock in the evening of April 15, 1920, Viola M. Sund, 10 years of age, with two other girls and a boy, was playing on a signboard, property of Freihofer's Baking Company, size about 6 by 10 feet, near the intersection of Eleventh and Heald streets, in the city of Wilmington, which sign had blown down on the tracks of the defendant company on Eleventh street, on the morning of the same day and which had been lifted from the tracks by a motorman of the defendant company and placed against the embankment, near to the trolley tracks, about 5 feet in height from the surface of the bed of the street; that a car of the defendant company, proceeding out of a switch, at about 4 or 5 miles an hour, on Eleventh street, in an easterly direction, struck the signboard, hurling it under the car, carrying Viola with it under the rear end of the car, whereby her right arm was almost cut off near the shoulder, and upon her removal to a hospital the arm was amputated. She gave evidence to the effect that the signboard was standing down the hill—one part in the street, and one part upon the hill; that she was seated in the middle of the sign, but did not see the car coming, and all at once she went under the car and knew she was hurt, and felt that her arm was broken. The two girls playing with her testified that they were sitting on the signboard, and that the car struck it, and it went under the car, and Viola went under with it. The boy's testimony was that they were playing on the signboard, and the edge was on the track; that the car came along and hit the edge, and it turned and slid, and Viola fell on her stomach and threw her right arm out, and the back wheel ran over it; that he saw the car coming, and knew it was going to hit, and he jumped off.

A brother of the injured child testified that he was at a corner of Eleventh and Heald streets, about 65 feet from the place of the accident, and saw the car at the switch; that when the car was about 5 feet from the signboard it "looked" to be on the track; that he heard the crushing sound and his sister's scream; that she was under the car which was on the signboard, it being about a foot on the track. He saw the motorman throw the switch,

about 75 feet from the signboard; that a big arc light hung in the middle of eleventh and Heald streets. Another brother at a corner of said streets did not see the signboard on the tracks. He went with the motorman, who took his sister into a store on the opposite side of the street, and he heard the motorman say "that he thought they could clear the sign." During the day the witness had seen the sign on the hill and it was not on the track. Another boy at a corner of said streets saw the motorman throw the switch light, but did not take notice of the sign until the car was about 5 feet from it, and then he heard a noise and ran over. One corner of the sign was about a foot over the track, and the other part was lying up against the hill. The curb at the foot of the hill was about 3 feet from the trolley track. There was the arc light, light from the store shining over the sign, and the light from the car.

Another witness saw Viola sitting on the top of the signboard. He did not think anything would occur from it. The board was lying down on the hill and the car came along and ran over it, and threw her underneath the car.

Another, running along the side of the car, saw the signboard about a foot and a half from the rail. Something hit and knocked it under the car. Viola went with it. The front wheels hit the sign and made it slide under the car. Other witnesses living across the street had observed the children playing on and about the signboard, and heard the noise at the time of the accident. One said the foot of the sign was within 10 inches of the track.

It was shown in support of the action brought by the father that he incurred professional and hospital expenses for services rendered to his injured child.

When plaintiffs had rested, there was a motion for nonsuit on the ground that the testimony of plaintiff's own witnesses was contradictory upon the question whether the signboard was upon the track of the company at the time of the approach of the car; that there was no duty on the company in respect to the signboard of a stranger; that under all the evidence it had not been shown that there was any breach of duty towards the infant plain-

tiff; that there is no positive and uncontradicted testimony to show that the motorman saw or should have seen the signboard in front of his car, or that he saw, or could have seen the children off at the side seated on the signboard; that the plaintiffs have failed in their proofs to sustain the essential allegations in the narrs, as to any breach of duty on the part of the defendant company.

Against the motion it was urged that, notwithstanding it was the duty of the motorman to keep a lookout ahead for obstructions in order to avoid accident, the car hit the sign and the infant plaintiff was thrown under the car and greatly injured. The testimony is that the signboard was either on the track or dangerously near at the time the car came out of the switch. Witnesses 75 feet away saw the danger of the sign, and the motorman also could or should have seen it. The evidence is, he did see it, and said, soon after the accident, "that he thought they could clear the sign."

BOYCE, J. [1] The court is constrained to submit the cases to the jury. The motion for a nonsuit is denied.

It was shown for the defendant company by one of the witnesses for the plaintiffs that she saw some children sliding down the signboard a few minutes before the accident, and that she had told F. of the company the day after the accident that the end of the sign was about a foot from the track.

A passenger on the car, sitting in the second or third seat from the rear, and on the side on which the signboard was, saw the board before the car came up to it, and it was not over the rail. Children were jumping on the signboard, seesawing at one end of the sign, up and down, a foot or foot and a half, and just as the car came alongside of them, they jumped off, and the board slid down after the front wheels had passed it, and we felt a bounce of the car at the rear wheels, and the car was stopped instantly. The front wheel of the rear truck was directly on the signboard. The injured child slid down with it, and she was about 6 inches from it. Another passenger, sitting over the rear set of trucks and next to the window, saw the top of the signboard extended

above the bank, and the children were balancing on it, raising it from the ground once in a while. The end of the signboard was not across the rail, and it was about 4 feet from the side of the car. Neither the front of the car nor the front wheels passed over the signboard. The wheels of the rear truck struck something. The signboard slipped down from the top of the bank at about the center of the car and the rear wheels struck the front end of it. The motorman was past the signboard when it began to slide down. The hand of the injured child was lying alongside of the rear journal box, which is between the two wheels. The bank was 65 to 75 degrees slant. The curb was from 3 to 5 feet from the nearest rail.

The motorman testified that he had passed the signboard, going west, an hour and a half before the accident, when the sign was resting against the bank, with the lower end on the curb and not on the tracks; that as he approached the sign on his return, it was against the bank, with the lower end still on the curb, and no part of it on the rail, and there was nothing to call his attention to any danger in passing it. That he saw the children on the bank. The car was going very slowly. That the first he knew of the accident was when he felt the rear wheels on the hind truck strike something. He stopped the car immediately. The rear wheels were on the corner of the sign. The child was lying between the rear wheel of the hind truck and the back platform. He did not say at the store, "I thought I could clear it;" but "I said that I had the front end of the car by the sign when the accident happened." The distance between the front truck and the rear truck is about 16 feet. The length of the car over all is about 45 feet.

The conductor was standing on the rear end of the body of the car near the rear truck. The first he knew of the accident was in running over something. He thought the car was off the track. It was the rear wheels that ran over the signboard. One corner of it, about a foot and a half, was under the rear truck when the car was stopped. There were no other marks on the signboard except where the wheels were on it. The other part of the sign

was out toward the bank. He was not looking towards the children and did not see them.

The principles of law set forth in the prayers for the plaintiff, and applicable to the facts of the cases, are stated in the charge of the court.

For the defendant the court was requested to give binding instructions to the jury to find a verdict for the defendant. It was claimed that the main allegation in the fourth count is the essential and fundamental allegation of a breach of duty. And it was urged: That, far from any evidence in the case supporting this, the evidence of the plaintiff shows that the defendant's agent, on the morning of the accident, placed the signboard, the property of a stranger, in a safe place. That the only evidence in the case, as to the knowledge of the defendant that the signboard was in any other place or position, is that of the crew of the car which, an hour and a half before the accident, had safely passed the signboard, still in a safe place. That there was no suggestion that the edge of the signboard in its reclining position could not have been within one inch or less of the track, and still a car pass it in safety. No previous knowledge, therefore, of the defendant before the time of the accident, can be predicated. The remaining prayers of the defendant are covered in the charge.

BOYCE, J., charging the jury:

The court has been requested to give you binding instructions for the defendant, in the two cases before you, being tried together, but, in view of the existence of conflicting testimony on a material question involved in the issue of fact before you, the cases are submitted to you for you to determine on which side the weight and the value of the testimony preponderates.

It is not denied that the accident alleged in the declarations filed in these cases occurred at about 8 o'clock in the evening of the 15th day of April, 1920.

The acts of negligence relied upon for a recovery are predicated upon an allegation in each count of the declarations to the effect that the defendant company negligently and carelessly

suffered and permitted a certain obstruction commonly known as a signboard about 6 by 10 feet to remain on or close to its tracks near the intersection of Eleventh and Heald streets in this city, the place of the accident. Following this allegation, it is charged specifically, in substance, in the first count of the declaration, filed by the infant plaintiff, that the car struck the obstruction or signboard, hurling it or twisting it around and about so that she, Viola M. Sund, who was sitting or standing thereupon, was hurled or thrown under the car, whereby she was greatly bruised, etc. The second count charges that the defendant well knowing or should have known that said obstruction or signboard was an attraction for children to play upon, and that Viola M. Sund was standing or sitting down with other children upon said obstruction or signboard and ignorant that the approaching car, operated and controlled by the defendant, would strike and turn the obstruction or signboard upon which she was standing or sitting, and by reason, etc., she was hurled or thrown under the car, whereby she was greatly bruised, etc. The third count charges that the defendant company well knowing that its cars could not pass upon its tracks said signboard without striking or running over the same, and well knowing that the said plaintiff was seated or standing upon the signboard, and by reason, etc., its said car, driven and operated along its tracks, struck and hurled the signboard so as to throw the plaintiff under its car, whereby she was greatly bruised, etc. And the fourth count charges that the defendant company well knowing that its cars could not pass upon its tracks said signboard without striking it or running over the same, and well knowing that the plaintiff was seated or standing upon the signboard, and by reason, etc., its car, driven and operated along its tracks, ran over and twisted and turned the signboard so as to throw the plaintiff under the car whereby she was injured. In the second action brought by the father of the infant plaintiff, the four several counts in the declaration, are like the four counts in the declaration filed in the first action, except that the father charges that by reason of the injuries which his daughter sustained he was caused to lose the services of his daughter and had to lay

out and expend large sums of money in attending to the cure of his daughter.

In these cases, gentlemen, the court will say to you, in the first instance, that you should carefully and conscientiously consider the evidence adduced and finally determine them upon the evidence before you, considered in connection with the law as the court shall announce it to you.

And further it may be said no contention is made that the signboard was the property of the defendant company, but on the contrary, it is not denied that it was the property of another.

The circumstances surrounding the accident have been detailed to you by the several witnesses. The court is not permitted to review and comment upon the testimony before you. You are the sole and exclusive judges of the witnesses and the weight and value of their testimony.

[2]    The defendant claims that it was not guilty of any negligence which caused the injury to Viola M. Sund. The fact of an accident by which injuries are sustained does not in itself, if not within the control of the defendant, or its servants charged with causing the accident, establish the fact that the injuries were the result of negligence. There can be no recovery for an unavoidable accident, or an accident not occasioned by negligence.

[3, 4]    These actions are based upon a charge of negligence on the part of the defendant company. If the damages for the recovery of which they were brought were not the result of negligence of the defendant company, the plaintiffs cannot recover. Whether negligence exists in a particular case and whose, when submitted to a jury, is a question of fact to be determined by the jury from the evidence. Negligence is never presumed. It must be proven, and the burden of proving negligence to the satisfaction of the jury by a preponderance of the evidence rests upon the party alleging it; that is, the burden of proof rests in these cases upon the plaintiffs, the defendant, as the court understands it, making no defense on the ground of contributory negligence. Therefore, the court will not charge you, as requested for the plaintiffs, upon the rule of law with respect to contributory negli-

gence of children.   Negligence has been defined to be the want of
ordinary care; that is, the want of such care as a reasonably pru-
dent and careful person would exercise under similar circumstances.
It has been termed the failure to observe for the protection of the
interests of another that  degree of care, prudence and vigilance
which the circumstances justly demand, whereby such other per-
son suffers injury.

Applying these principles of law as to what constitutes negli-
gence to the facts in these cases, you are to determine whether the
defendant company in the movement of its car at the time and
place of the accident did exercise such due care and caution, as a
reasonably prudent person would have exercised under like cir-
cumstances.

It is the claim of the plaintiffs that at the time of the accident
the signboard was either upon the track or so near thereto that
the car of the defendant company could not pass it without run-
ning over or striking the signboard, and that the servants of the
company in charge of the car saw or could have seen the position
of the signboard and that small children, including the infant
plaintiff in the first action, were sitting or standing on the sign-
board, and that the negligence of the defendant company, through
its servants in charge of the car, consists in attempting to pass
over and along its tracks under such circumstances.   If you find
that the preponderance of the evidence sustains this claim, then
your verdict should be for the plaintiffs.

[5]   The claim of the defendant, however, is that the sign-
board was resting against the embankment adjacent to the street,
which embankment was about 5 feet in height from the surface
of the bed of the street, and that the foot of the signboard was
from 3 to 5 feet from the nearest rail of the tracks of the defendant
company, and that the car passed the signboard so resting against
the embankment without striking it until the wheels of the rear
truck came opposite to the signboard, and that neither the ser-
vants of the company nor passangers upon the car had their at-
tention attracted to any disturbance in the movement of the car
until the front half of the car had passed, when there was a "jolt

or bounce," causing the belief that the car had jumped the track; that the car was immediately stopped when the servants and some of the passengers got off, and it was discovered that the wheels of the rear truck of the car had run over a corner of the signboard, and that the injured plaintiff was lying face down on the signboard with her right arm and part of her body under the car between the rear wheel of the rear truck and the platform. If you find that the signboard was in such position as that the car could safely pass when the motorman approached the signboard, and that it slipped under the car after the front part had passed it, and that it was the slipping of the signboard which caused the accident, without any negligence of the defendant company such as is alleged in the plaintiff's declarations, then the plaintiffs should not recover, for the plaintiffs cannot recover for any negligence except as alleged, and, as the court has already said, the burden of proving such negligence rests upon the plaintiffs.

[6, 7] When, as in this case, the evidence is conflicting, it is the duty of the jury to reconcile it if they can. If, however, they cannot do so, it is their duty to accept and be governed by the testimony of those witnesses whom they think, under all the facts and circumstances of the case, are most entitled to credit and belief, and reject the testimony of such witnesses as they think unworthy of belief, if any. In determining the credibility of the witnesses and the degree of credit that should be given to their testimony, the jury may consider their bearing upon the stand, their apparent fairness or unfairness, their interest or bias, if any they have, their intelligence and opportunity of knowing and remembering the things about which they testified, and any other facts or circumstances disclosed by the evidence which indicate to the jury reliability or unreliability of the witnesses, or any of them.

[8] You are to determine these cases from the preponderance of the evidence considered in connection with the instruction which you have received. And by a preponderance of the evidence is not necessarily meant the greater number of the witnesses but the weight and value of their testimony.

[9] If your verdict should be for the infant plaintiff in the first case, it should be for such a sum as will reasonably compensate her for her injuries, including therein her pain and suffering in the past and such as may come to her in the future, and for any permanent injuries received, resulting from the accident. In the second case, if your verdict should be for the plaintiff father, it should be for such a sum as will reasonably compensate him for expenses incurred for professional and hospital services in the care and attention given to his daughter.

Verdicts for the plaintiffs.

Having moved for a new trial and in arrest of judgment, the defendant filed, in substance, the following reasons:

That the verdict was (1) against the law; (2) against the weight of the evidence; that the court erred, in that it did not instruct the jury to find a verdict for the defendant; that the damages were excessive; and that the court, if opportunity had been had to properly consider the evidence, would have directed a verdict in favor of the defendant.

In support of the motion it was urged: That the testimony of the children was indefinite and uncertain as to whether the signboard at the time the car approached it was off, or on, the track. That the boy at the street crossing was not in a position, because of the physical facts, to see the signboard on the track. That the other boy at the crossing was in a better position to see if the sign was on the track, and he did not see it on the track. That the testimony of the witnesses for the plaintiffs as to the actual position of the signboard in relation to the tracks was contradictory, and in opposition to the physical facts. That the only positive, uncontradicted testimony for the plaintiffs was that Viola slipped down with the signboard and was injured. If the sign was in a position of safety when the car approached it, and it slipped while the car was passing, then the defendant company is not liable.

In reply it was insisted that several of the plaintiffs' witnesess saw the corner of the signboard on the track, others said it was very near the track. The fact is, it was hit by the car in passing

it and Viola was greatly injured. Then there is the positive testimony of one of the witnesses for the plaintiffs that the motorman said at the store "that he thought they could clear the sign."

Boyce, J. [10] I have very carefully read and considered all the evidence in these cases, and I have been unable to reach the conclusion that the plaintiffs did not sustain the burden of proof imposed on them by sufficient evidence to warrant the jury in finding verdicts for the plaintiffs. It is peculiarly the province of the jury to determine doubtful questions of fact, whenever the evidence , or reasonable inferences that the jury may draw from it, is sufficient to support a verdict for the plaintiff. *Creswell v. W. & N. R. Co.*, 2 *Pennewill*, 211 (222), 43 *Atl.* 629; *Tully's Adm'r. v. P. W. & B. R. Co.*, 2 *Pennewill*, 537 (540), 47 *Atl.* 1019, 82 *Am. St. Rep.* 425. Ordinarily a verdict found under such circumstances should not be set aside. And notwithstanding the forcible argument of counsel for the defendant, it is the opinion of the court that the motions for new trials in these cases should be denied. The motions are denied.

Note.—It being apparent from the evidence that the verdict found for John A. Sund was in excess of the aggregate amount of his claims, in the sum of $126, a remittitur of the excess was consented to and filed.